### In re PRINCETON INDUSTRIES, INC., Debtor.

**Bankruptcy No. 80 B 11850.**

United States Bankruptcy Court, S. D. New York.

Aug. 10, 1982.

Horvath & Young, New York City, for Ditto Apparell of California, Inc.

Levin & Weintraub, New York City, for Princeton Industries, Inc.

Jasper & Jasper, New York City, for Trustee in Bankruptcy.

## DECISION AND ORDER ON APPLICATION FOR RETURN OF DOUBLE PAYMENT

EDWARD J. RYAN, Bankruptcy Judge.

On November 5, 1980, Princeton Industries, Inc. ("Princeton") filed a petition for reorganization under Chapter 11 of the Bankruptcy Code[1] and thereafter was continued in possession of its assets.

Ditto Apparell of California, Inc. ("Ditto") moved this Court, by application and order to show cause dated December 12, 1980, for an order directing Princeton to pay to Ditto the sum of $40,000, said amount to represent an overpayment made by Ditto to Princeton for merchandise sold and delivered prior to the commencement of this case.

There is no dispute as to the material facts; the parties stipulated thereto as follows: Ditto is a California corporation which conducts business as a manufacturer of women's jeans and tops. Princeton is a New York corporation which conducted business as a textile manufacturer. On September 23, 1980, Ditto ordered velour piece goods from Princeton pursuant to a certain Princeton Contract no. 2006 (the "merchandise"). The terms of payment were cash before delivery. Ditto tendered to Princeton its check no. 010131 dated October 3, 1980, in the sum of $40,000, as prepayment for the merchandise. Princeton sent to Ditto an invoice no. 01387 for the merchandise on October 13, 1980, in the amount of $40,325.03.

On October 17, 1980, Princeton advised Ditto that it could not credit the $40,000 sent by Ditto to Princeton as prepayment of the merchandise until the check received therefor had cleared. Princeton requested of Ditto a cashier's check by one-day mail. On October 17, 1980, Ditto tendered to Princeton a cashier's check no. 34703 from the Wells Fargo Bank in the amount of $40,000, payable to Princeton. Ditto's check no. 010131 dated October 8, 1980, in the sum of $40,000 was deposited by Princeton on October 10, 1980, and cleared the bank with the result that the proceeds thereof were credited to Princeton's account. The Wells Fargo Bank cashier's check no. 35703 dated October 17, 1980 in the sum of $40,000 was deposited by Princeton on October 20, 1980 and cleared the bank with the result that the proceeds thereof were credited to Princeton's account. Both Ditto's check no. 010131 and the Wells Fargo Bank check no. 35703 cleared and were credited to Princeton's account prior to the commencement of the within Chapter 11 case. Ditto made a demand for the return of $40,000, which demand was refused.

Ditto asserts in its application to this Court that Princeton has been unjustly enriched by receipt of Ditto's overpayment and that Princeton is required to return the overpayment to Ditto. "The right to a refund of money paid by mistake arises out of a duty implied by law requiring the recipient of the money to return the same

---

1. The petition was converted to Chapter 7 of the Bankruptcy Code on July 14, 1981.

to the rightful owner." *Knight Newspapers, Inc. v. United States*, 395 F.2d 353 (6th Cir. 1968); *See* 70 C.J.S. Payment 157. However, in a bankruptcy case, an unsecured creditor must have a priority claim to be paid in full ahead of other unsecured creditors. The mistaken overpayment in this case is not entitled to priority status.

Bankruptcy Code Section 507 provides for priority in the order of payment for (1) administrative claims and fees, (2) unsecured claims of involuntary petition "gap" creditors, (3) wages, salaries, and commissions, (4) contributions to employee benefit plans, (5) lay-away consumer creditors and (6) taxes and customs duties. Ditto's overpayment is not within any of the above-mentioned categories and thus there is no statutory authority to grant preferential treatment to Ditto's claim.

*In re Dilbert's Leasing & Development Corp.*, 345 F.2d 172 (2d Cir. 1964), discussed the issue of double payment in the bankruptcy context. In that case, J. J. Fourth Sales Corp., as tenant, entered into a lease with Dilbert's Quality Supermarkets, Inc. ("Quality"), as landlord for which Dilbert's Leasing & Development Corp. ("Leasing") served as prime landlord.

In accordance with the lease, the tenant paid to the landlord the sum of $10,000. The lease provided that the sum of $3,333.34 would be applied in payment of the rental for the premises for the month of August 1972, the last month of the lease. The balance of the sum was retained by the landlord as security. Subsequent to July 31, 1962, J. J. Fourth Sales Corp. was notified in writing to make all payments of rent due or to become due under the lease to Leasing as landlord in the place and stead of Quality.

Thereafter, Quality and Leasing filed petitions in bankruptcy. A Trustee was appointed on March 14, 1963, the date that Quality and Leasing converted to Chapter X from Chapter XI.

On or about August 6, 1963, the United States District Court for the Eastern District of New York entered an order granting the application of Garlor Associates, Inc. ("Garlor"), to cancel a ground lease assigned to Leasing because of the insolvency of Leasing. The ground lease covered the premises leased to J. J. Fourth Sales Corp. under the lease of July 31, 1962. The order further granted the application of the Trustee in Bankruptcy of Quality and Leasing to assign said ground lease to Garlor for the payment of a sum of money and for the turn over of all rents collected from the premises as of July 1, 1963 to Garlor.

Prior to the entry of the order, J. J. Fourth Sales Corp. paid the July 1963 rent to Leasing. J. J. Fourth Sales Corp. paid the rent due on August 1963 to Garlor.

Subsequent to August 26, 1963, J. J. Fourth Sales Corp. demanded the Trustee return the monies paid and deposited by J. J. Fourth Sales Corp. pursuant to the lease between J. J. Fourth Sales Corp. and Leasing. The security deposit portion of the $10,000 was returned with interest to J. J. Fourth Sales Corp. but the sum of $3,333.34 was not returned. The Court held that the $3,333.34 portion of the deposit was not a security deposit and that the petitioner was not entitled to the return of the sum as such. The Court ruled that the $3,333.34 rent prepaid by J. J. Fourth Sales Corp. for August 1972 was due the petitioner but that the petitioner was not entitled to a preference on that sum.

On appeal, the Circuit Court affirmed the order below, stating, "When the advance was paid to Dilbert's Quality Supermarkets, Inc. in July 1962, the sum became its property. Acceleration of the lease merely created a debtor-creditor relationship between Dilbert's Leasing & Development Corp. and appellant, J. J. Fourth Sales Corp. The equities do not favor appellant as against the general creditors because the advance payment was made prior to the bankruptcy proceedings; to grant a preference where none is authorized by § 64 of the Bankruptcy Act would be unfair to the general creditors." *In re Dilbert's Leasing & Development Corp.*, 345 F.2d 172, 173 (2d Cir. 1964).

Like the advance payment involved in *In re Dilbert's Leasing & Development Corp.*,

when Ditto made an advance payment to Princeton that sum became the property of Princeton, the payee.  In seeking the return of that payment, Ditto is a general creditor with an unsecured claim.  As a general unsecured creditor, Ditto does not receive priority in the payment of its claim.  To provide for priority in the payment of Ditto's claim would be to unjustly enrich Ditto at the expense of all other unsecured creditors.

Ditto's claim against Princeton is a general unsecured claim against Princeton, as debtor in possession, and is not entitled to any priority under § 507 of the Bankruptcy Code.  The application of Ditto for return of the $40,000 in full is denied.

It is so ordered.